Susan Rotkis
AZ Bar # 032866
PRICE LAW GROUP, APC
382 S. Convent Avenue
Tucson, AZ 85701
T: (818) 600-5506
E: susan@pricelawgroup.com

*Attorney for Plaintiff Doe*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe,<br><br>　　Plaintiff,<br><br>v.<br><br>Steward Health Care System LLC, and Vitalyst Health Foundation, a/k/a Tempe St. Luke's Hospital;<br><br>　　Defendants. | Case No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, John Doe ("Mr. Doe" or "Plaintiff"), alleges that Defendants Steward Health Care System LLC ("Steward") and Vitalyst Health Foundation, a/k/a Tempe St. Luke's Hospital ("St. Luke's") (referred to collectively as "Defendants") have violated his federal Fair Credit Reporting Act ("FCRA) rights and have injured him by, among other things, depriving him of employment, meaningful work and income; publicly humiliating him and causing him emotional distress and mental anguish; depriving him of information he was entitled to under the FCRA; and causing him physical injury and sickness.

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(3)(A)(i), 1681b(b)(3)(A)(ii).

2. Defendants terminated Plaintiff from his job at Steward Health System and Tempe St. Luke's Hospital ("St Luke's") without first complying with their duties under the FCRA, including Defendants' obligation to provide him with a copy of the employment-purposed consumer report it procured, notice before taking adverse action against him, and giving him at least five (5) business days opportunity to correct or explain the consumer report.

3. Use of an employment-purposed consumer report is strictly governed by the FCRA.

4. Employment-purposed consumer reports are also sometimes called "background checks" or "background reports."

5. Defendants were "users" of employment-purposed consumer reports, which they used to make hiring and retention decisions.

6. Within two years prior to the filing of the Complaint, Defendants relied on an inaccurate and derogatory employment-purposed consumer report about Plaintiff, and based their decision to terminate his employment in whole or in part on Plaintiff's employment-purposed consumer report containing a criminal public record.

7. Steward is a private, for-profit company that was founded nearly a decade ago.

8. Steward's headquarters is located in Texas, but it operates hospitals in Texas, Arizona, Utah, Louisiana, Arkansas, Florida, Ohio, Pennsylvania, and Massachusetts.

9. Upon information and belief, Steward is responsible for staffing the hospitals in its network, including St. Luke's.

10. Steward employs more than 5,000 physicians at 36 hospital campuses and multiple urgent cares.

11. As part of its hiring process, Steward requests and reviews employment-purposed consumer reports generated by non-party PreCheck, Inc. ("PreCheck").

12. Upon information and belief, Steward and St. Luke's work together in unison in making their employment decisions, including hiring and termination decisions.

13. PreCheck operates a large database of public records and related employment histories as a nationwide consumer reporting agency ("CRA"). PreCheck maintains an FCRA database to prepare and furnish consumer reports for employment and other purposes.

14. PreCheck markets itself as a healthcare screening provider offering "a highly integrated suite of talent screening and monitoring solutions tailored to fit your healthcare organization."

15. Defendants' employment decisions are based in whole or in part on the criminal information contained in the PreCheck consumer reports. Therefore, Defendants are obligated to adhere to certain strictures of the FCRA.

16. When using criminal-background reports for employment purposes, "users" must, before taking any adverse action based in whole or in part on the contents of the report, provide job applicants like Plaintiffs with a copy of their respective reports as well as a written summary of their rights under the FCRA.

17. Providing a copy of the consumer report containing criminal background information as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports.

18. The FCRA is designed to permit job-seekers and employees whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

19. Defendants are informed of the necessary rigors FCRA compliance imposes, as the facts alleged in this case have been the subject of litigation against other users of consumer reports and consumer reporting agencies.

20. Plaintiff brings his claim against Defendants under 15 U.S.C. § 1681b, because they, as an omission in their hiring process, failed to provide Plaintiff with a copy of his employment-purposed, criminal-background consumer report or a summary of his rights under the FCRA at least five (5) days before taking an adverse action against him.

21. The violations of the FCRA alleged in this Complaint are akin to common law causes of action such as invasion of privacy, intrusion upon seclusion, publication of private facts, and defamation.

**PARTIES**

22. Plaintiff John Doe is a "consumer" as defined by 15 U.S.C. § 1681a.

23. Mr. Doe lives in Mesa, Arizona, which is within the territorial confines of the District of Arizona United States District Court.

24. Steward is a privately held, for-profit corporation conducting business and hiring employees in the District of Arizona and throughout the United States.

25. St. Luke's is a nonprofit corporation conducting business and hiring employees in the District of Arizona.

26. Defendants are "person[s]" and "users" of "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

## JURISDICTION AND VENUE

27. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

28. Venue is proper in the District of Arizona because Defendants are subject to personal jurisdiction in this District, maintain places of business in this District, and made the employment decisions based on consumer reports at issue in this case within this District.  28 U.S.C. § 1391(c). Further, Plaintiff is a resident of this District.

29. PreCheck furnished an employment-purposed consumer report concerning Plaintiff to his employers, Steward and St. Luke's.

30. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer report information by consumer reporting agencies ("CRAs"), including public record information.

31. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by employers and other individuals.

32. The FCRA mandates that a report user, like Steward and St. Luke's, provide the

consumer a copy of their report and a summary of their rights under the FCRA, **before** taking any adverse action based in whole or in part on a consumer report.

33. Upon information and belief, Defendants and PreCheck are parties to an agreement whereby PreCheck furnishes customized, employment-purposed consumer reports about prospective and current employees.

34. Upon information and belief, the agreement between PreCheck and Defendants requires Defendants to abide by the FCRA in the use of employment-purposed consumer reports.

35. Steward has an independent obligation to comply with the FCRA as employers and users.

36. St. Luke's has an independent obligation to comply with the FCRA as employers and users.

37. Although Defendants deemed Plaintiff ineligible for hire based in whole or in part on a consumer report, they did not provide Plaintiff with sufficient notice of adverse action.

38. The PreCheck report that Defendants used to make decisions about Plaintiff's employment contained an erroneous criminal conviction record.

39. As a result of Defendants' use of the erroneous consumer report and reliance on information therein, Plaintiff was terminated from employment, and left jobless just days before Christmas.

40. Defendants failed to provide pre-adverse action notices to Plaintiff and other job applicants and employees, together with a copy of the applicants' consumer reports and

a description of their rights as required by 15 U.S.C. § 1681b(b)(3).

41. Defendants' violations of the FCRA have been willful, wanton, and reckless in that they knew, or should have known, that they were failing to comply with the requirements of the FCRA.

42. Defendants' willful disregard of their duty to Plaintiff violates the FCRA as a matter of law, and it exacts serious consequences on the Plaintiff, job applicants and interstate commerce.

43. The natural result of Defendants' failures to abide by obligations, procedures, and limitations of the FCRA deprived Mr. Doe of his consumer rights and prejudiced his ability to maintain employment and challenge inaccurate information contained in consumer reports that Defendants bought from PreCheck.

## THE PLAINTIFF'S EXPERIENCE

44. Plaintiff applied for a job as a Behavioral Health Technician at Tempe St. Luke's Hospital ("St. Luke's") through Steward sometime before October 19, 2020.

45. Plaintiff is trained as a nurse.

46. Plaintiff was trained and qualified for the job.

47. On November 2, 2020, Stephanie Jenkins ("Ms. Jenkins"), Steward's Executive Director of Staffing and Workforce Planning, interviewed Mr. Doe by telephone.

48. On or about November 18, 2020, Plaintiff received an email from Ryan Dias ("Mr. Dias"), a representative from St. Luke's Human Resources Department.

49. In a November 18, 2020 email, Mr. Dias offered Plaintiff a job and scheduled his "new hire" appointment for November 19, 2020.

50. Plaintiff was excited about starting a new job in his field, earning an income, rebuilding his life and self-esteem.

51. As part of his onboarding process, Plaintiff authorized Defendant to obtain his employment purposed consumer report.

52. On November 22, 2020, Plaintiff received an email notification from PreCheck that indicated he had provided the permission necessary for his background check.

53. In the notification, PreCheck included a link to a "Summary of Your Rights Under the FCRA" and a paragraph that stated Plaintiff would be notified if the information in his PreCheck report could "influence the outcome of [his] candidacy."

54. Plaintiff knew that his criminal public record contained two misdemeanors.

55. PreCheck failed to maintain strict procedures to assure that his criminal public record history was complete and up to date, thus Plaintiff was unaware that PreCheck would publish an inaccurate report reflecting a felony conviction.

56. Plaintiff officially started working at St. Luke's on November 30, 2020.

57. The first week of employment was dedicated to training.

58. On his second day of training, a woman (presumably from St. Luke's Human Resources department) approached Plaintiff during the training in order to have him sign a piece of paper.

59. Plaintiff was not given the opportunity to read the paper or to ask questions, he was made to feel that there was no choice but to sign the paper.

60. However, when Plaintiff asked the woman for a copy of the paper, she said that she could not give him one.

61. Instead, the woman simply told Plaintiff that he would be paid for the days he attended training even if he was subsequently terminated.

62. Eager to complete the hiring and training process, Plaintiff signed the paper in compliance with the woman's directive.

63. Plaintiff never received a copy of the paper or his rights under the FCRA from Defendants.

64. Defendants refused to supply Plaintiff with a copy of the consumer report that Defendants obtained from PreCheck.

65. On December 3, 2020, Plaintiff received an email from Ms. Jenkins that indicated she was trying to build Plaintiff's schedule for the remainder of the year.

66. Plaintiff completed training on December 4, 2020.

67. Although Plaintiff was concerned that he had been forced to sign a paper, of which Defendants refused to provide a copy to him, Plaintiff was nonetheless hopeful that it was a formality and that he would soon be put on the schedule.

68. Either during or shortly after Plaintiff's training, he received a phone call from PreCheck. The PreCheck representative indicated to Plaintiff that it had a few questions verifying his past employment and education.

69. During that conversation, Plaintiff asked Precheck about his criminal record. When he learned that PreCheck was reporting a felony, he explained to the representative that that information was wrong.

70. Plaintiff provided PreCheck with the employment and education information it requested.

71. Thereafter, he assumed that PreCheck would correct its inaccurate reporting of Plaintiff's public criminal record history.

72. Upon information and belief, PreCheck did not make any changes to Plaintiff's employment purposed report after he explained that he did not have a felony.

73. Later, Plaintiff learned that the PreCheck report indicated that Plaintiff was charged with two felonies in Pinal County, Arizona.

74. It is true that Plaintiff was at one point *charged* with two felonies.

75. PreCheck accurately reported that one of the dismissed charges was a felony charge (case no. CR 2015-02333).

76. But in the public record field of Plaintiff's report, PreCheck inaccurately reported the other felony charge (case no. CR 2016-01142).

77. Rather than indicating that Plaintiff's conviction was for a misdemeanor, PreCheck reported that the felony charge had been "dismissed" on January 9, 2017, while simultaneously reporting Plaintiff was sentenced to "Jail – 9 months/Probation-18 months/Restitution."

78. Although originally charged as a felony, it was reduced to a misdemeanor.

79. In the same public records entry, PreCheck also listed five "offenses" and corresponding dispositions.

- CT1) Trafficking In Stolen property, First Degree - DISMISSED
- CT2) Theft - GUILTY
- CT3) Burglary in the Second Degree - DIMISSED
- CT4) Fraudulent Use of A Credit Card - GUILTY
- CT5) Forgery of a Credit Card – DISMISSED

80. The public record section of Plaintiff's PreCheck report was inaccurate in a

number of ways.

81. It is a matter of public record that as of November of 2017, Plaintiff's conviction is a misdemeanor and not a felony.

82. Yet, three years after the reduction to misdemeanor, Defendants bought a report from PreCheck about Plaintiff, of which this report inaccurately indicated that Plaintiff had a felony.

83. This situation exemplifies the reason that Congress enacted the provisions of the FCRA that require an employer or user of an employment-purposed consumer report to provide to a job applicant or employee a pre-adverse action notice, copy of the consumer report and a summary of FCRA rights prior to making any adverse employment decision – so that the employee or applicant can correct or explain the derogatory information before the employer makes a decision.

84. Naturally, Plaintiff was distraught when he learned that PreCheck was inaccurately reporting his criminal history.

85. On or about December 8, 2020, Plaintiff sent Mr. Dias a copy of the Court Order reducing Plaintiff's felony charge to a misdemeanor.

86. Plaintiff did not receive a response from Mr. Dias.

87. On December 12, 2020, Plaintiff emailed Ms. Jenkins to inquire about the stall in his onboarding process.

88. Ms. Jenkins asked Plaintiff to forward her a copy of the Court Order that reduced his felony charge to a misdemeanor, which Plaintiff immediately provided.

89. Upon information and belief, Ms. Jenkins communicated with Mr. Dias regarding

Plaintiff's application and PreCheck report shortly thereafter.

90. Again, Plaintiff did not receive an update from Ms. Jenkins nor Mr. Dias.

91. After nearly two weeks of limbo, Plaintiff returned his badge to St. Luke's on December 13, 2020.

92. On December 16, 2020, Ms. Jenkins informed Plaintiff via email that St. Luke's would not be moving forward with his employment.

93. That same day, Plaintiff asked Ms. Jenkins for a copy of the employment-purposed consumer report that Defendants used as a factor in terminating his employment.

94. Only after termination by Defendants, it was PreCheck that sent Mr. Doe an email that contained his employment-based consumer report and "A Summary of Your Rights under the Fair Credit Reporting Act."

95. To this day, despite requesting it several times, Plaintiff has never received a copy of the consumer report that led to his termination directly from Defendants.

96. In addition to Defendants' independent obligations under the FCRA, PreCheck has a separate and independent duty to supply FCRA-compliant notices to Plaintiff when it sells a report containing a criminal public record likely to have an adverse impact on employment.

97. Even if Defendants delegated or contracted with a third party to comply with its FCRA obligations, it is nonetheless always the Defendant-users responsibility to ensure its own FCRA compliance.

98. Defendants' failure to provide a timely a copy of employment-purposed consumer report violated the FCRA.

99. Defendants' failure to provide timely notice to Mr. Doe that his employment may be declined or terminated based in whole or in part on information contained in a consumer report before Defendants take adverse action against the consumer as required by 15 U.S.C. § 1681b(b)(3) also violated the FCRA.

100. The background report about Plaintiff was an FCRA-governed, run-of-the-mill, employment-purposed consumer report and not an investigative report.

101. Upon information and belief, PreCheck did not conduct the type of searching inquiry that would satisfy the requirements to be considered an investigative report under the FCRA.

102. The timing of Defendants' notice to Plaintiff that employment may be declined or terminated based in whole or in part on information contained in a consumer report violates the timing requirements at 15 U.S.C. § 1681b(b)(3) that are necessary to protect Plaintiff's FCRA rights by correcting or explaining the errors in the report.

103. As a result of Defendants' conduct, Mr. Doe suffered economic injuries such as job loss, lost time.

104. As a result of Defendants' conduct, Mr. Doe suffered non-economic injuries including but not limited to stress about his economic security, anxiety about whether he would be able to get another job, fearfulness that Defendants would hurt him further in obtaining employment, humiliation that he was terminated, stonewalled, and tricked into signing a document that he was not given an opportunity to peruse or a copy to keep, and despair over the fact he was not given the chance to correct or explain the inaccurate report.

105. As a result of Defendants' conduct, Mr. Doe suffered physical injuries and sickness, including but not limited to loss of sleep, nausea, headache, lethargy, and harmful thoughts.

106. Defendants' violations of the FCRA were willful because they acted in reckless disregard of Mr. Doe's rights. Upon information and belief, Defendants were not only statutorily, but also contractually bound to comply with the FCRA. Yet, they recklessly and willfully ignored their FCRA obligations, and refused to comply even when the Plaintiff requested information he was entitled to receive.

107. There are numerous, experienced human resources and talent acquisition professionals employed by Defendants who have responsibilities to protect Plaintiff's FCRA rights. Many of these employment professionals, including the professionals such as Mr. Dias at St. Luke's, are members of organizations such a Society of Human Resource Managers (SHRM), which have provided extensive guidance to employers about compliance with the FCRA related to employment purposed consumer reports. https://www.shrm.org/resourcesandtools/hr-topics/talent-acquisition/pages/fcra-avoid-risky-background-checks.aspx

108. Defendants' violations of the FCRA are not mere procedural violations, but substantial violations of the consumer's substantive consumer rights, which resulted in real-world and existential harm to Plaintiff by withholding congressionally-mandated information from him that he would have used to clear up the inaccuracies.

## COUNT ONE
### Failure to Provide Pre-Adverse Action Notice – Copy of Report
### 15 U.S.C. § 1681b(b)(3)(A)(i)

109. Based upon the facts Plaintiff has alleged herein, and which he incorporates into each count, Plaintiff is entitled to judgment that Defendants violated the FCRA by failing to provide him with a copy of the consumer report upon which it based, in whole or in part, the decision to terminate him.

110. Congress mandated that consumers have a right to the information in their consumer reports when users of consumer reports for employment-purposes, such as Defendants in this case, make adverse employment decisions based on the information in those reports.

111. Courts, the Federal Trade Commission, and the Consumer Financial Protection Bureau have made the determination that a consumer is entitled to notice at least five (5) business days prior to taking adverse action. This requirement serves to protect the consumer's right to information guaranteed by the statute.

112. Steward and St. Luke's followed their policies and procedures in making the employment decision about Plaintiff, in whole or in part based on a consumer report, including in failing to provide the copy of the consumer report upon which it made adverse decisions regarding Plaintiff.

113. Even when Plaintiff requested the report from Defendants, they refused to comply with their obligation to provide it to him.

114. Steward and St. Luke's willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an adverse employment decision

to Plaintiff.

115. Not only was Plaintiff deprived of information he was entitled to receive, he was deprived of the protections that the information was designed to afford him, including being able to address the inaccuracy of the actual report that the employer received and utilizing the summary of FCRA rights in conjunction with the report before the adverse action could have been taken.

116. Plaintiff's injuries described herein are proximately caused by the Defendants' violations of the FCRA.

117. Plaintiff demands statutory, actual, and punitive damages, declaratory and injunctive relief, as well as attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n & 1681o.

**COUNT TWO**
**Failure to Provide Pre-Adverse Action Notice – Summary of Rights**
**15 U.S.C. § 1681b(b)(3)(A)(ii)**

118. Based upon the facts Plaintiff has alleged herein, and which he incorporates into each count, Plaintiff is entitled to judgment that Defendants violated the FCRA by failing to provide him with a copy of the official Summary of Rights published by the Consumer Financial Protection Bureau.

119. Upon information and belief, Steward and St. Luke's followed their policies and procedures in failing to provide a copy of the Summary of Rights to the Plaintiff in conjunction with a pre-adverse action notice and copy of his report.

120. Steward and St. Luke's willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to Plaintiff

before taking adverse action that was based in whole or in part on a consumer report.

121. The reason that the Summary of Rights is so important is that it arms employees and job applicants with information about their rights that they can use to protect themselves when an employer is actively in violation of the FCRA.

122. Among the rights that are summarized are the very rights that Defendants violated in this case: the right to know what is in the consumer's file, the right to dispute information before adverse action is taken, the right to be told what information is being used to take the adverse action, and the right to seek damages for violations.

123. As a direct result of Defendants' failure to provide the Plaintiff with the summary of FCRA rights at least five (5) days prior to taking adverse action against him, he suffered the injuries described in detail herein.

124. Plaintiff seeks statutory, actual and punitive damages; declaratory and equitable relief; attorneys' fees and costs pursuant to 15 U.S.C. § 1681n & 1681o.

**WHEREFORE**, Plaintiff seeks following relief:

A. That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages for each count of the Complaint pursuant to 15 U.S.C. §§ 1681n and 1681o;

B. Declaratory and/or injunctive relief as the court may allow;

C. Attorneys' fees, expenses and costs; and

D. Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted this 28th day of June 2021.

                    <u>*/s/ Susan Rotkis*</u>
                    Susan Rotkis
                    AZ Bar # 032866
                    PRICE LAW GROUP, APC
                    382 S. Convent Avenue
                    Tucson, AZ 85701
                    T: (818) 600-5506
                    E: susan@pricelawgroup.com

                    *Attorney for Plaintiff Doe*